# JOHN LYNCH

## *v.*

# NEHEMIAH A. BALDWIN.

1. LANDLORD AND TENANT—*what act of landlord will release the tenant from the payment of rent.* If the tenant loses the benefit of the enjoyment of any portion of the demised premises by the act of the landlord, the rent is thereby suspended. The act of the landlord must be something more than a mere trespass, to have this effect. It must be something of a grave and permanent character, done with the intention of depriving the tenant of the enjoyment of the premises.

2 SAME—*intention of landlord, a question of fact.* As there are some acts of interference by the landlord with the tenant's enjoyment of the premises which do not amount to an eviction, but which may be either acts of trespass or eviction, according to the intention with which they are done, it follows that, whether the acts complained of amount to an eviction depends upon circumstances, and is a question in all cases for the jury.

3. On the trial of a distress for rent, where an eviction was set up in defense, the court instructed the jury that the acts of the landlord in putting in a water-pipe and a pump and sink in an upper room of the demised

premises without the tenant's consent, amounted to an eviction: *Held*, that the instruction was erroneous, as it was a question of fact for the jury to say whether the act amounted to an eviction or not, depending on the intention with which it was done, as shown by the facts and circumstances.

4. SAME—*breach of independent agreement, not an eviction.* Where a house was leased to a tenant, and the landlord, outside the lease, verbally agreed that the tenant should have the use of a well and water-closet on another lot, and the tenant was deprived of those by reason of the landlord failing to pay the rent of the same, it was *held*, that this could not amount to an eviction so as to defeat the collection of rent, as they were not named in the lease, but the tenant's right in respect to them grew out of a different contract.

5. DISTRESS FOR RENT—*recoupment of damages.* As the object of inquiry on the trial of a distress for rent is to ascertain the amount of rent due, any acts of the landlord impairing the value of the use of the demised premises may be shown, and the damages caused thereby may be recouped.

APPEAL from the Court of Common Pleas of the city of Aurora; the Hon. RICHARD G. MONTONY, Judge, presiding.

Mr. S. W. BROWN, and Mr. A. J. HOPKINS, for the appellant.

Mr. B. F. PARKS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant, as landlord, issued a distress warrant against appellee, as his tenant. The bailiff made a return to the Court of Common Pleas of the city of Aurora, and a summons was duly issued returnable to the March term, 1873, of that court. The amount claimed to be due was $350, for the rent of a house and lot in the city. The property distrained consisted of a general assortment of groceries, show cases, stoves, etc. The plea of the general issue was filed, and a stipulation that all defenses might be introduced under it that could be made in such a proceeding. On the trial, the jury found a verdict for the defendant, and, after overruling a motion for a new trial, a judgment was rendered in his favor.

The defense interposed was, that appellant, after leasing the premises to appellee, put a water-pipe through one corner of the store, about one foot from the walls, and put in a pump and sink in the upper room, which he had rented appellee. He claims that this was done without his knowledge or consent. Appellee kept an oyster saloon and eating house immediately under the room in which the sink and pump were placed, and it is claimed that the water leaked through and injured the room below.

It was also claimed that, at the time of renting, a water-closet and well were on adjoining premises, and appellee had authority to use them, but appellant failing to pay for their use, appellee was prevented from using them. There was evidence tending to sustain the defense, and upon which the jury found for defendant; and the question before the jury was, whether these acts, if true, amounted to an eviction. They were not urged to obtain a recoupment of damages inflicted by the landlord on the tenant. It is claimed that, as the landlord had leased both the upper and lower rooms to appellee, and had thus entered upon his possession, and had thereby inflicted a substantial injury, it operated as an eviction; and being thus evicted, he was not liable to pay rent.

This question has been before us in several cases, but the last, and in which the authorities were reviewed, and a rule deduced from them, is *Hayner* v. *Smith,* 63 Ill. 430. In that case it was held, that, "if the tenant loses the benefit of the enjoyment of any portion of the demised premises by the act of the landlord, the rent is thereby suspended. The term 'eviction' is now popularly applied to every class of expulsion or amotion. That it might be taken to mean this, not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises. The question, therefore, of eviction, depends upon the circumstances, and is in all cases to be determined by the jury."

That, "there are clearly some acts of interference by the landlord with the tenant's enjoyment of the premises which do not amount to an eviction, but which may be either acts of trespass or eviction, according to the intention with which they are done. If those acts amount to a clear indication on the landlord's part that the tenant shall no longer continue to hold the premises, they would constitute an eviction."

This case may limit to some extent what has been said in former cases in this court, but it is in view of the many cases which are arising between landlords and tenants, in which this defense is attempted to be interposed, where there is no more than a mere trespass by the landlord, that the fair administration of justice seemed to require some limitation to what had been previously said.

The court below told the jury that the acts of putting in the pipe, pump and sink amounted to an eviction. This was wrong, as that was a question for determination by the jury, under instructions in accordance with the rule announced in *Hayner* v. *Smith, supra.* The deprivation of the tenant of the use of the well and water-closet was not an eviction, nor could it be, inasmuch as their use was not embraced in the lease. All of his rights to their use grew, as we understand it, out of a verbal agreement. Inasmuch as the instructions were not in accord with the law, the judgment of the court below will have to be reversed.

As to recouping damages for any loss or injury sustained by the tenant, we have no doubt that it may be done, as they grow out of the same transaction.

The object of this inquiry is to ascertain the amount of rent due; and if the acts of the landlord impaired the value of the use of the premises, then the tenant should not pay the same rent as if the landlord had done no act to reduce such value. It is not like a demand growing out of or owing on some other account, which, by the repeated decisions of this court, can not be set off or recouped in a proceeding of this character; but damages growing out of a breach of the

terms of the lease by the landlord, may. *Lindley* v. *Miller*, 67 Ill. 244.

For the error in giving improper instructions, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*