# WILLIAM MCFARLANE
## v.
## JOHN PIERSON.

*Landlord and Tenant—Abandonment—Action to Recover for Work and Labor Performed—Claim of Eviction, not Sustained—Refusal of Landlord to Make Repairs—Remedies of Tenant.*

1. Where the landlord in violation of his covenant fails to make repairs, the tenant may make them himself, charging the expense against the landlord, or sue for damages for breach of covenant.

2. In an action by a tenant against the landlord to recover for work and labor performed by him on the demised premises, after an alleged eviction, it is *held:* That the failure of the landlord to furnish material for repairs did not amount to an eviction; that certain evidence touching such failure was improperly admitted; that this error was cured by subsequently excluding said evidence; that the evidence does not show such misconduct on the part of the landlord toward the servants of the tenant, nor such action touching the matter of his boarding as to amount to an eviction; and that certain instructions were erroneous, one of which is particularly objectionable because unsupported by any evidence presented.

[Opinion filed December 11, 1886.]

McFarlane v. Pierson.

Appeal from the Circuit Court of Will County; the Hon. Dorrence Dibell, Judge, presiding.

Messrs. Flanders & Shutts, for appellant.

Mr. J. W. D'Arcy, for appellee.

It is well settled that where a tenant is evicted by the landlord, he is released from the payment of rent.   Wood's Landlord and Tenant, 793; Taylor's Landlord and Tenant, Sec. 379; Smith v. Wise, 58 Ill. 141; Leopold v. Judson, 75 Ill. 536; Haynor v. Smith, 63 Ill. 430.

An eviction may be produced by any act of the landlord or any person acting under his authority, which deprives the tenant of the beneficial enjoyment of the premises.   Wood's Landlord and Tenant, 793.

In order to produce an eviction it is not necessary there should be an actual physical expulsion, for the landlord may do many acts tending to diminish the enjoyment of the premises, which will amount to an eviction and exonerate the tenant, if he quits possession, from the payment of rent. Taylor's Landlord and Tenant, Sec. 380, Note 1; Cohen v. Dupont, 1 Sandf. 260.

"Whether the acts complained of amount to an eviction depends upon the circumstances, and is a question in all cases for the jury."   Haynor v. Smith, 63 Ill. 430; Lynch v. Baldwin, 69 Ill. 210.

Lacey, J.   Appellee sued appellant before a Justice of the Peace on account and recovered judgment for $125, whereupon appellant took an appeal in the case to the Circuit Court where the cause was again tried by a jury and verdict rendered in appellee's favor for $180, upon which verdict judgment was rendered and appeal taken to this court.

It appears from the evidence that appellant, the lessor, leased to appellee a certain farm in Jackson Township in the County of Will by lease in writing bearing date March 3, 1885.

The lease provided that appellee was to have the west room

and equal rights of kitchen and upstairs of the house on the premises and also to have orchard and one-third of the apples and half the dried apples.   Lease was to continue from the 1st March, 1885, to 1st March, 1886.   The appellee was to pay for the use thereof as follows:   Two-thirds of all the corn, oats and potatoes, hay and hogs grown on the said devised premises—corn to be in crib, oats in bin, and hay stacked in yard.   Appellee was to keep up the fences, and also furnish the material.   This latter provision was probably a mistake in drawing up the lease.   It was no doubt to be appellant who was to furnish the material.   Appellee was to have ten or fifteen cows to milk and the butter was to be equally divided between both parties.   Appellee was to have six sows and the pigs were to be divided as above.

Appellant was to furnish teams, tools, feed and seed necessary to work the farm, with several other provisions not necessary to mention; and the women were to do the cooking, washing and mending for the family and to clean rooms at the rate of $50 per year, and if the appellant had any men to work he was to pay at the rate of 50 cents per week, etc.

The appellee removed on the place and proceeded to fulfill his part of the covenants in the lease on the 5th of March, 1885.   Appellant lived in part of the same house with his two sons, one about twenty and the other about eight years old, and appellee's wife proceeded to cook for them and do the work generally, as the lease provided.   Appellant furnished his own provisions.   After about two months and after doing plowing and considerable work under the lease, appellee became dissatisfied and abandoned the premises and refused further to perform his covenants in the lease.

It is insisted that appellee was evicted by the wrongful acts of the appellant and was excused from the further performance of his covenants, and that he may, as he did do in the court below, recover for the work and labor performed on the premises by him as for work and labor performed.   On the other hand the appellant contends that the appellee abandoned the leased premises without legal excuse and that he has no right to recover for anything he may have done under the lease.

This was the only issue tried before the court below and the alleged errors of the court and jury arising on that hearing we are called on to review here. There was evidence admitted by the court but afterward excluded, going to show that that portion of the lease which required the appellee to furnish the material to repair the fence was a mistake and that the actual agreement was that appellant should furnish such material.

This testimony was admitted at first on the idea that in case appellant was obliged to furnish the materials and failed to do so, *that* justified appellee in throwing up the lease and abandoning the premises, in fact, that such failure amounted to an eviction.

It was undoubtedly error on the part of the court to admit such evidence. In case a landlord in violation of his covenant fails to make repairs the remedy of the tenant is to make repairs himself and charge the expense against the landlord, or else sue on such breach of covenant and recover the damages occasioned thereby. Sedgwick on Damages side page 198; Wood's Landlord and Tenant, Sec. 380, 442. But as far as the error in admitting the evidence was concerned the court cured it by afterward excluding it.

But under the issue in the case before the jury the only question was whether the appellee was evicted. That is, was the conduct of appellant such as to deprive appellee of the full and peaceable enjoyment of the premises? It was wholly immaterial whether a mistake had been made in the lease or whether, conceding that the lease and agreement was that appellant was to furnish the material to fix up the fences, he failed to do so; for the reason that if such failure existed it was no legal ground for abandoning the premises by appellee.

Yet the court gave the appellee's 1st, 2d, 3d, 4th and 6th instructions, which lay down the law obtaining in case of ordinary contracts when, if the one party fails to perform an essential part thereof, the other may also refuse.

The sixth instruction especially would be understood by the jury as holding that in case appellant was to furnish the lumber to build the fence and failed in doing so, the appellee might abandon the premises and sue for his labor. It tells them in

general terms that if one party is ready and willing to perform a legal contract and partly performs it and is prevented by the other from completing such performance, then such contract may be abandoned, etc., leaving the jury to say what amounted to such prevention without reference to the facts of the case on trial. In regard to the misconduct on the part of the appellant which is claimed amounted to an eviction, it is only necessary to remark that we see no such evidence as would justify appellee in abandoning the premises.

It seems from the evidence that appellee's wife and her hired girls did the housework during nine weeks for appellant and his two boys as well as for her husband and his hired men, for all were living in the house together on the farm. Appellee had one hired girl one and one-half weeks who was the sister of his wife ; she quit, and she got another who stayed four weeks; the last girl was only fifteen years old, the first was twenty-seven years old. Mrs. Pierson swears that the first one did not want to stay because appellant objected to her work, and he objected to the second girl because he did not like her. McFarlane and his boys had separate rooms, and she and her girl did the work for both families and the work about the house. ·Mrs. Pierson had a child born to her about twenty days after she went on the place. She testified that appellant at one time said to her sister: "Wouldn't you like to kiss me?" "Wouldn't you rather kiss me than my son John?"

Appellant testifies that he did not recollect making the proposition to Mrs. Pierson's sister to kiss him but might have done so jokingly. This was all the evidence of any indecent behavior on the part of appellant toward Mrs. Pierson or her girls. It does not appear that any of the ladies took any serious offense at it at the time as the girl did not leave on that account, but because appellant did not like her work. Then after that a second girl was there four weeks and no indecent or improper proposals were made to her by appellant and she left because appellant did not like her work. This is what Mrs. Pierson thinks. It would seem the excuse for abandoning the place on account of indecent conduct of appellant toward the hired girls of appellee, was an afterthought

McFarlane v. Pierson.

not regarded sufficient at the time. That ground for abandonment should be laid out of the question. This girl who was only fifteen years old did cooking in such manner that appellant as he claims had just cause to complain. She would bake up bread enough at one time to last from six to nine days and the bread would become so hard he could scarcely eat it. This is not contradicted. It would appear that he had just ground for complaint. But let that be as it may, the mere fact, and that is all there is of it, that appellant complained of the manner in which his work was done would not amount to an eviction. If his complaints were such that Mrs. Pierson could not satisfy him in regard to the work and they were unjust, she might have refused to board him and have refused to comply with that covenant in the lease. It was not necessary to the enjoyment of the farm that appellee should be permitted to board appellant. If there was any profit in it damages could be recovered by appellee for being refused the privilege, but this would not amount to an eviction. There appears to be no sufficient evidence in this case upon which the jury would be justified in finding that there was an eviction.

The tenth of appellee's instructions submits to the jury the question whether or not the appellant did not " use improper language or make indecent or immodest proposals to appellee's wife," etc.

There is no evidence that anything of the kind, in the remotest degree, ever took place, and it was very improper to submit such question to the jury. It seems that Mrs. Pierson did the work for both families for some time after the last girl left and finally appellee got tired and dissatisfied and abandoned the premises and we think without just cause. The appellant had no intention to deprive the appellee of the full use and enjoyment of the premises and never attempted so to do. Lynch v. Baldwin, 69 Ill. 210 ; Hoyner et al. v. Smith et al., 63 Ill. 430.

For the reasons above indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*