## R. Hall McCormick, Plaintiff in Error, v. Potter-Herrick Wall Paper Mills, Defendant in Error.

### Gen. No. 14,354.

1. LANDLORD AND TENANT—*what competent to rebut defense of eviction.* A resolution by a corporate tenant which tends to show its desire to relinquish the demised premises, is competent upon the question of the good faith of the defense of eviction.

2. LANDLORD AND TENANT—*how question of eviction determined.* Whether there has been an eviction, in any case, depends on the intention of the landlord, as shown by the evidence; *held,* in this case, that the levying of a distress warrant and the locking of the door of the demised premises did not, under the evidence, constitute an eviction which would defeat the recovery of rent.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. MANCHA BRUGGEMEYER, Judge, presiding. Heard in this court at the March term, 1908. Reversed and remanded. Opinion filed March 22, 1909.

ERNEST SAUNDERS, for plaintiff in error.

BULKLEY, GRAY & MORE, for defendant in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The plaintiff, McCormick, January 22, 1906, leased to the Potter-Herrick Wall Paper Mills, by written lease, the five-story and basement building numbered 65 and 67 South Water street, and the two upper floors of the building numbered 61 and 63 South Water street, in the city of Chicago, in Cook county, Illinois, from May 1, 1906, till April 30, 1911, reserving as rent the sum of $27,500 per annum, payable in monthly installments of $458.33 each, in advance, on the first day of every month of the term. The rent for the months of November and December, 1907, not having been paid, the plaintiff, December 4, 1907, issued a distress warrant directed to Joseph W. Mattes, authorizing him to distrain personal property of the defend-

ant, for the rent, and Mattes levied on 2362 bundles of wall-paper situated on the upper floor of the building numbered 61 and 63 South Water street, and filed the distress warrant, with his return thereon, in the Municipal Court, where such proceedings were had before the court and jury that the jury rendered a verdict for the sum of $549.99, and the court, after overruling a motion of plaintiff for a new trial, rendered judgment for said sum and $68 custodian's fees, and for costs. To reverse this judgment is the purpose of the writ of error.

The plaintiff put the lease in evidence, and proof was made that the rent for November and December, 1907, had not been paid, whereupon defendant's attorney stated that the defense was that the defendant had been evicted from the demised premises, and defendant's attorney tendered to plaintiff's attorney a certified check for $540 for rent up to December 4, 1907, which tender was refused.

The defendant's claim is that it was evicted by plaintiff from the premises December 4, 1907, and that such eviction discharged it from payment of the rent after December 4, 1907.

William Croak, called by defendant, testified, in substance, that Mr. Saunders, plaintiff's attorney, took him to the leased premises as custodian of the property on which the distress warrant was levied, and that he first went to the fifth floor of the building numbered 61 and 63, then returned to the office and remained in the rear of the building on the first floor till the place was about to be locked up for the night, when he returned to the fifth floor and put a padlock on the door, and on the night of December 6, 1907, he fastened the door with lock and chain, so that it could not be opened without unlocking, or breaking the chain; that he had been at the premises every day since he so fastened the door and the lock and chain were still on it, and the key in his pocket. It was December 17, 1907, when the witness testified. Croak further testified that no

one authorized him to lock the door, and that defendant's attorney asked him who put him there, and he said Mr. Saunders, and that he, Croak, declined to take off the chain.

Paul Krech testified, substantially, that he was connected with defendant in December, 1907, and that Mr. Saunders came to defendant's office and introduced Mr. Mattes to him and said he, Mattes, was appointed custodian, and that a distress warrant had to be levied, and witness asked if that meant that Mattes had to remain there, and Saunders said no, and witness took them to the fifth floor and showed them the bundles of paper, and Saunders said that there was enough to satisfy the warrant, and also said that it was not his intention to interfere, in any way, with the conduct of defendant's business, and suggested that Mr. Mattes should come round there once a day, and that he, Saunders, and Mattes would see that everything was intact. That appeared to be satisfactory. Mattes came along December 4th and took an account of the bundles in the room, and next morning I found the room locked, and that it was impossible to enter it. I have had no access to the room since December 4th. We used the room for the storage of wall-paper in the daily course of our business. I immediately looked for other premises, and a few days later I found premises at 51 and 53 North Desplaines street, and last Thursday began to move out the stock, and am still moving it. On cross-examination witness testified that, three or four weeks before December 4th, he saw Mr. Bradley, the landlord of numbers 53 and 55 North Desplaines street, in regard to leasing said premises, and that, the day before he testified, he took a lease from him.

The plaintiff, in rebuttal, offered in evidence the following letter from R. H. McC. Potter, the defendant's president, to the plaintiff, after proving the signature of Mr. Potter:

"I am in receipt of your letter of November 5th.

In reply can only say (as I stated in your office some months ago) that the question of rental of the property now leased by the Potter-Herrick Wall Paper Mills, is a matter to be taken up with that concern. I am a stockholder and director, but this must be determined by the majority of the votes of the directors. I can only say unofficially, however, knowing the bankrupt condition of the concern, that anything which will decrease its expenses will be acceptable, and as a large creditor, very naturally I should favor any plan resulting to the advantage of the concern. We have been making a strenuous effort to realize on the assets of the concern as profitably as possible, but something will have to be done very soon to wind up its affairs. A meeting of the creditors will take place some time this month, when it will be determined what will be done. In the meantime, however, I can only state unofficially (as above) that I think any disposition you can make of the property would be approved by the company. I had understood that the entire space was to be rented by a wholesale grocery house, named Sexton. The creditors have been delaying their action, pending the result of this prospect.

Yours very truly,

R. H. McC. POTTER".

On objection by the defendant this letter was excluded. At a meeting of the defendant's directors, held November 29, 1907, all the directors being present, the following resolution was unanimously adopted:

"Whereas, this company is about to wind up its affairs in the city of Chicago, and is desirous of vacating the premises now occupied by it at 65-67 South Water street in said City. And whereas the estate of Leander McCormick of said premises has proposed to find a new tenant for said premises, and release this company from all liability, under its existing lease as soon as a new lease is entered into. Now, therefore, be it resolved, that in consideration of the above agreement on the part of the landlord, the said landlord be given authority to immediately lease said premises".

The minutes of the meeting, including the foregoing

resolution, were offered in evidence by the plaintiff and were excluded on defendant's objection. The court erred in excluding the offered evidence. It tended to prove that the defendant was anxious to rid itself of the leased premises, and bears on the question of its good faith in claiming that it was evicted by the plaintiff. The evidence of Croak, the custodian, is that he was unauthorized by plaintiff, or any one, to lock the door of the room in which the wall paper levied on was, and the evidence of Mr. Krech, the defendant's witness, shows that it was not the plaintiff's intention to interfere, in any way, with the defendant's business, beyond issuing the distress warrant.

There is not a particle of evidence that the defendant had any occasion, after the levy, or any need, to use the room in which the paper levied on was stored. It had, three or four weeks before the levy, been negotiating for a lease of other premises, and obtained the lease the day next before the trial.

Whether there is an eviction, in any case, depends on the intention of the landlord, as shown by the evidence. Hayner v. Smith, 63 Ill. 430; Lynch v. Baldwin, 69 ib. 210; Morris v. Tillson, 81 ib. 607; Kistler v. Wilson, 77 Ill. App. 149; Dennick v. Ekdahl, 102 ib. 199.

In Hayner v. Smith the court quote with approval the following language of the court, in an English case, with reference to eviction: "I think it may now be taken to mean this—not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord, with the intention of depriving the tenant of the enjoyment of the demised premises". The language quoted is also cited with approval in Lynch v. Baldwin, *supra,* and in Morris v. Tillson, 81 Ill. p. 623, the court say: "The rule laid down in Hayner v. Smith and wife, 63 Ill. 430, and followed in Lynch v. Baldwin, 69 Ill. 210, and Walker et al. v. Tucker, 70 *id.* 528, is, that acts by the landlord, in interference with the tenant's possession,

to constitute an eviction, must clearly indicate an intention, on the part of the landlord, that the tenant shall no longer continue to hold the premises". In Rice v. Dudley, 65 Ala. 65, the same rule is announced, the court citing Hayner v. Smith. To constitute an eviction, there must be an interference with the possession of the tenant by the landlord or with his consent. Ogden v. Sanderson, 3 E. D. Smith, 166, 169. The testimony of Croak, defendant's witness, is that he was not authorized by any one to lock the door, and there is no evidence that the plaintiff consented to or knew that it was locked.

In Morris v. Tillson, 81 Ill. 607, cited *supra*, the court say: "Nor do we think any delay of the officers, in executing the writ, unauthorized by Morris, however liable it might render them, could be held to be an eviction by Morris".

The evidence does not sustain the defendant's claim that it was evicted from the demised premises, or any part thereof, by the plaintiff. In view of what has been said, we do not deem it necessary to say anything with regard to the instructions. Inasmuch as the cause must be remanded for a new trial, we think it proper to call attention to the fact that there is no evidence in the record warranting the allowance of $68 as custodian's fees, nor has our attention been called to any statute in respect to such fees.

The judgment will be reversed and the cause will be remanded for further proceeding not inconsistent with this opinion.

*Reversed and remanded.*