**Joel C. Carlson and John E. Erickson, Appellees, v. Morris G. Levinson, Appellant.**

**Gen. No. 27,410.**

1. FORCIBLE ENTRY AND DETAINER—*breach by tenant of collateral agreement as within provision for termination for any breach.* In an action for forcible detainer of office space to be used for a law office, it is no defense that one of the grounds assigned for cancellation of the lease was defendant's failure to pay for stenographic services, that the provision for such payment is an independent and collateral undertaking for breach of which no right of re-entry was specifically reserved, where the lease expressly provides that the landlord may terminate the lease for breach of any covenant and agreement.

2. FORCIBLE ENTRY AND DETAINER—*effect of giving nonstatutory notice to quit where lease waives notice.* An action for forcible detainer may be maintained notwithstanding the notice to quit was not in statutory form where the lease expressly waives the giving of notice and in such case the commencement of suit is sufficient.

3. FORCIBLE ENTRY AND DETAINER—*when defense of partial eviction is question of fact.* In an action for forcible detainer of a law office after refusal to pay rent and for stenographic services which the landlord was required to furnish for a stipulated sum, it is error to direct a verdict for the plaintiffs where the evidence shows that after a misunderstanding between defendant and plaintiffs and the stenographer the latter refused to take defendant's work and is in conflict as to the extent of such refusal and reasons therefor.

4. FORCIBLE ENTRY AND DETAINER—*defense of partial eviction by lessor not dependent upon abandonment by tenant.* The defense of partial eviction by the refusal of the landlord to furnish stenographic services at a specified sum as agreed in the lease is available to defendant in a suit for forcible detainer although he continued to occupy the premises and paid no rent therefor.

5. FORCIBLE ENTRY AND DETAINER—*occupancy by clerk as breach of covenant against use of demised premises by other persons as questions of fact.* It is a question of fact whether defendant violated the provisions of a lease of premises for a law office that no other persons should be permitted to use or occupy such premises by permitting his law clerks to use such office where the evidence shows that defendant used the premises in the conventional manner with the assistance of a clerk.

6. FORCIBLE ENTRY AND DETAINER—*admissibility of evidence that landlord acquiesced in manner of use alleged as breach.* In an action of forcible detainer of a law office by permitting other persons than the tenant to occupy and use the premises in violation of the terms of the lease, the alleged breach being use of the premises by defendant's law clerks, it is error to exclude evidence offered by defendant that he had long occupied the premises under a prior agreement and then employed clerks who used the room without objection by plaintiff.

Appeal by defendant from the Municipal Court of Chicago; the Hon. D. H. WAMSLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed February 16, 1923. Rehearing denied March 1, 1923.

JOEL C. CARLSON and JOHN E. ERICKSON, *pro se.*

MORRIS G. LEVINSON, *pro se.*

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs brought an action of forcible detainer

against the defendant to recover possession of an office in a suite occupied by the plaintiffs and defendant as law offices in Chicago. At the close of all the evidence there was a directed verdict for the plaintiffs, and the defendant prosecutes this appeal.

The record discloses that for some time prior to February 25, 1920, plaintiffs and defendant were occupying a suite of offices for the practice of law in the Otis Building, Chicago; that the plaintiffs held a lease for the suite and on February 25, 1920, sublet one of the rooms to the defendant. The lease is in writing and the space demised is described as "the private office of said lessee, (1) including the use of the telephone and extension * * * reception room, vault, towels and other privileges enjoyed by the occupants of said suite of offices to be occupied for a law office and for no other purpose whatever." The lease covered the period from May 1, 1920, until April 30, 1922, and provides that the defendant in consideration of the demise covenanted and agreed with the landlords to pay $48 per month rent payable monthly in advance on the first day of each month. By the fourth paragraph of the lease the defendant covenanted and agreed with the plaintiffs that he would not allow the premises to be used for any purpose other than "hereinabove specified, nor to be occupied in whole or in part by any other person, and will not sublet the same, nor any part thereof, nor assign this lease without in each case the written consent of the party of the first part." The thirteenth paragraph of the lease provided: "And the said lessee, as a further consideration for this lease, does hereby agree to pay the one-third part of the services of a stenographer as long as the same is furnished by the lessors or either of them." The lease further provided that if default be made in payment of the rent or in any of the "covenants and agreements" by the defendant, it should be lawful for the landlords at any time, at their election,

without notice to declare the term ended and to re-enter the premises with or without process of law.

The evidence tends to show that a stenographer was furnished by the plaintiffs for the use of the defendant and others, and that the defendant paid the rent and his portion of the telephone charges and stenographer's salary until May 1, 1921; that about January 1, 1921, some complaint was made by the defendant that he had been unable to have his work taken by the stenographer at different times; that another attorney had been permitted by the plaintiffs to avail himself of the services of the stenographer. The evidence also showed that plaintiffs complained to the defendant on several occasions that he was violating the terms of the lease in that he permitted two or three persons acting as clerks for him to occupy the office and to use the telephone. The evidence further discloses that for some time prior to January 1, 1921, there had been some misunderstanding between the parties and that it continued and increased after that date. On May 9, 1921, plaintiffs rendered an itemized statement to the defendant of three items: $48 rent for the month of May, $33.33 for stenographer's services, and a telephone charge of $6.69, totaling $88.02. The defendant refused to pay the item of $33.33, but gave plaintiffs his check for $54.69 in payment of the other two items. Plaintiffs returned the check to defendant but there is some dispute in the evidence as to when it was returned, whether shortly after it was given to plaintiffs as they contend, or after the suit was started as defendant contends. But this question is immaterial to a decision of the case. Afterwards on June 1, 1921, plaintiffs rendered another statement for $95.22 containing the three items mentioned in the statement of May 9, and in addition a charge of $7.20 for telephone service. When this statement was received by the defendant he again refused to pay the $33.33, which item he struck out together with the tele-

phone item of $6.69, and on June 2 gave plaintiffs his check for the balance, $55.20, together with the statement. Plaintiffs refused to accept the check and returned it to the defendant. On June 3 plaintiffs served a written notice on the defendant stating that he was in default under his lease for failure to pay the $95.22 mentioned in the statement of June 1; that he had breached the provisions of paragraph 4 of the lease by permitting one Nudleman and one Machiewitz to occupy the whole or part of the premises demised, and that unless payment was made on or before noon of June 4, and the defendant's action in permitting Nudleman and Machiewitz to occupy the premises was discontinued before that time the lease would be terminated. After the service of this notice the situation remained unchanged and on June 10 this suit was brought.

The defendant contends that even if he had violated the provisions of paragraph 13 of the lease in that he failed to pay his portion of the stenographer's salary, this would not furnish grounds for the cancellation of the lease because this paragraph is an independent and collateral undertaking, and that it is the law that where there is a breach of a covenant in a lease and no right of re-entry is reserved, the landlord's only remedy is an action for damages. This contention is immaterial here because the lease expressly provides that in case the defendant was in default of any rent or of any of the covenants and agreements of the lease, then the landlord might terminate the lease without notice and without process of law, and therefore, if the evidence shows that the defendant breached paragraph 13 of the lease in failing to pay his portion of the stenographer's salary, the plaintiffs were warranted in terminating the lease. But the defendant argues that the lease has not been terminated because the notice served is not such a notice as section 9 of the Landlord and Tenant Act [Cahill's Ill. St. ch. 80,

¶ 9] provides, nor is it such a notice as is provided for by any statute. Since the lease expressly waived the giving of notice, no notice was required at all. We have recently given this question serious consideration in the case of *Clark v. Stevens,* 221 Ill. App. 233, and we there held that where a lease waives the giving of notice, such as in the instant case, no notice of termination is required, but that the beginning of the suit is sufficient. In the instant case if the defendant breached the terms and provisions of the lease, no notice was required.

Plaintiffs contend that the defendant has breached the lease in at least four respects: (1) by refusing to pay his share of the stenographer's salary for the month of May, 1921; (2) by permitting two other persons to occupy the premises; (3) that he had not paid or offered to pay the amount due plaintiffs on June 1, 1921, and (4) that he had not paid the rent for the month of June. In this connection, in arguing the first ground mentioned, plaintiffs say that the defendant attempted to justify his refusal to pay for the stenographic services May 1 on the ground that one of the plaintiffs had not engaged another stenographer to help with the work as he had agreed, and on the further ground that the defendant had some disagreements with the stenographer as to who had the prior right to her services. On this question defendant made an offer of proof during the cross-examination of one of the plaintiffs to which an objection was sustained. But the plaintiffs' argument here overlooks the testimony of the defendant given in his own behalf that after having some misunderstanding with the stenographer and with the plaintiffs in reference to the doing of his stenographic work, the stenographer refused to take any of his work thereafter. Defendant testified that the stenographer had refused to take his work and said: "It was about the end of April or first of May of this year. Miss Fels refused.

The stenographer for Mr. Erickson refused to take my work and then I complained to Mr. Erickson." In rebuttal Miss Fels denied that she had refused to take defendant's work during regular office hours, but stated that she had refused to do so on several occasions after five o'clock in the evening. It will thus be seen that whether defendant had been refused the services of the stenographer after May 1 was a disputed question of fact. If he had been refused such services, it is obvious that he could not be required to pay the $33.33 demanded in the statements above mentioned. But counsel for the plaintiffs say that even if they failed to furnish stenographic service, it would be no defense because "under the law the tenant must pay so long as his possession continues though he may have good cause for abandonment." The cases cited by plaintiffs are to the effect that if a tenant by reason of the acts of the landlord has just ground for abandoning the premises but fails to do so, he is liable for the rent. This is as far as the authorities cited by plaintiffs go. But it has long been the settled law of this State that where a lessee has been wrongfully evicted by his landlord from a portion of the demised premises he is thereby excused from the payment of any of the rent, although he continues to occupy the remaining portion of the premises to the end of the term. *Hayner v. Smith,* 63 Ill. 430; *Lynch v. Baldwin,* 69 Ill. 210; *Walker v. Tucker,* 70 Ill. 541; *Leiferman v. Osten,* 167 Ill. 93; 2 Wood on Landlord & Tenant 1107.

In the *Hayner* case the court discusses the authorities, some holding that an eviction from a part of the leased premises, by the act of the landlord, would justify the tenant in abandoning the premises and thus discharge him from liability for rent, and others holding that any act of the landlord which defeats the enjoyment of the entire property by the tenant, though the tenant continue in possession of part of the prem-

Carlson et al. v. Levinson, 228 Ill. App. 104.

ises, would be a bar to recovery of the rent. The court there said (p. 432): "The law implies covenants against such acts of the landlord as destroy the beneficial enjoyment of the premises leased." On p. 433 the court says: "The principle upon which a tenant is required to pay rent is the beneficial enjoyment of the premises unmolested in any way by the landlord; and if the jury believe from the evidence that the plaintiff took possession of any part of the premises leased by her to the defendants, against their consent, then in law it is an eviction, and releases the defendants from the payment of any more rent." This was said in passing on instructions. On page 434, the court says: "A legal eviction of the tenant by a third person excuses the payment of rent—so does any eviction by the lessor. If the eviction be partial, by a third person, the rent will be apportioned, but a partial eviction by the lessor excuses from the payment of the whole rent.

"The principle is that a party who deprives another of the consideration upon which his obligation is founded cannot, in general, recover for a violation of that obligation."

The *Hayner* case was a suit for rent and the defense was that the landlord took possession of a building on the premises, which had been erected by the tenant, without the consent of the tenant, and it was contended that this amounted to a partial eviction which relieved the tenant from the payment of rent. The court held that instructions should have been given to the effect that if the landlord had evicted the tenant without his consent from a part of the premises, this would relieve the tenant of the payment of any more rent although he continued to occupy that portion of the premises from which he had not been evicted. This law has been consistently followed by the Supreme Court of this State and we have found no case qualifying the rule announced. The principle,

as stated, is that ''a party who deprives another of the consideration upon which his obligation is founded cannot, in general, recover for a violation of that obligation.''

So in the case at bar, if the testimony of the defendant is true, then he was deprived by the plaintiffs of the services of the stenographer, and plaintiffs thereby violated their obligation and cannot recover for the rent or stenographer's salary, and, this being true, there was no breach on behalf of the defendant. Of course, we do not wish to be understood as intimating that the defendant has proven that there was a refusal on the part of the plaintiffs to furnish a stenographer, as the defendant contends. That was a controverted question of fact and should, therefore, have been submitted to the jury. *Libby, McNeill & Libby v. Cook*, 222 Ill. 206. The court erred in instructing the jury to return a verdict for the plaintiffs.

On the trial the defendant offered to prove by a witness that he had occupied the law office in question for a considerable period of time under a prior agreement with the plaintiffs and that during that period he had had in his employ a clerk or clerks, and that no objection had been made by the plaintiffs to the clerks. Upon objection this evidence was excluded on the ground that it would tend to vary the terms of paragraph 4 of the lease. That paragraph provided that defendant would not permit the office to be occupied in whole or in part by any other persons, and that he would not sublet or assign the lease. We think this provision would not necessarily be violated by the defendant having a law clerk who, as in the instant case, performed the duties ordinarily performed by a clerk in a law office, because the lease provides that defendant is to occupy the premises as a law office, and we think that this means conducting a law office in the conventional way with the assistance of a clerk at least. And if the evidence showed

that the defendant had been occupying the premises prior to the time of the written lease in question under an arrangement with the plaintiffs and at the time of the execution of the lease he had a clerk in his employ, we think the evidence of this should have been admitted. And the most that can be said is that whether the defendant was permitting more persons to occupy the premises than would be warranted in any circumstances was a question for the consideration of the jury.

For the errors indicated the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

THOMSON, P. J., and TAYLOR, J., concur.