12726

SKALOWSKI v. JOE FISHER, INC. *ET AL.*

(149 S. E., 340)

*Messrs J. Hertz Brown,* and *Lyles, Daniel & Drummond,* for appellants,

*Messrs. Nicholls, Wyche & Byrnes,* and *DePass & Wrightson,* for respondent,

August 27, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The action is one of most unusual character. It was instituted on May 18, 1927, the complaint alleging substantially the following facts, stated in narrative form: The plaintiff, Skalowski, is the owner of a store building in the city of Spartanburg. On August 20, 1924, he leased it to the Cannon & Fetzer Company for a period of five years, commencing January 1, 1925, at a rental of $425 per month; the lease taking the place, as of January 1, 1925, of a lease between the same parties then in operation. A consideration moving the lessees to accept the lease was the agreement of the lessor to make certain repairs and improvements upon the property not exceeding an outlay of $6,000, which he complied with. Later the lease was assigned to and accepted and assumed by the defendant, Joe Fisher, Inc., Henry Rittoff, and B. Gunzberg, who are now occupying the store through their agent, the defendant, Herman Wile, Jr.

The gravamen of the complaint is contained in the following paragraph: "That this plaintiff is informed and believes that the defendants are packing up their stock of goods, preparing to and are about to ship and remove said merchandise

beyond the limits of this State, to wit: to Buffalo,. New York, in derogation of the rights of this plaintiff under his lease, without making any satisfactory arrangements with plaintiff in regard to the payment of his said rental, and with the purpose and intent to defraud him out of said rent and improvements, all to his damage in the sum of five thousand ($5,000.00) dollars."

This appeal involves the validity of an order of his Honor, Judge Sease, refusing a motion of the defendants to vacate an attachment, and the validity of an order of his Honor, Judge Dennis, overruling a demurrer to the complaint interposed by the defendants.

At the time of the commencement of the action, the plaintiff procured an attachment which was levied upon the stock of goods, fixtures, etc., in the store, as the property of the defendants, Joe Fisher, Inc., Wile, Rittoff, and Gunzberg. Later a second attachment was procured which was levied upon the same property as the property of the same defendants. Later a third attachment was procured, which was levied upon the same property, *as the property of the defendant, Joe Fisher, Inc.*

Upon motion *of the plaintiff,* his Honor, Judge Sease, passed an order, dated May 23, 1927, vacating the first two attachments above referred to, and on the same day the third attachment was issued and levied as stated.

The defendants then gave notice of a motion to vacate the third attachment, upon various grounds which will be adverted to, accompanied by the answer of the defendants, their demurrer, and certain affidavits. This motion was heard by his Honor, Judge Sease, who passed an order, dated June 4, 1927, refusing to dissolve the attachment and declining to pass upon the demurrer.

From this order the defendants served notice of intention to appeal, and on August 23, 1927, the defendant, Joe Fisher, Inc., replevied the attached chattels by filing a $10,-

000.00 surety bond, packed them up, and shipped them out of the State.

At the October Term, 1927, the demurrer of the defendants to the complaint was heard by his Honor, Judge Dennis, and on November 21, 1927, he filed a formal order overruling it, from which the defendants have appealed.

I. *The appeal from the order of his Honor, Judge Sease, refusing the defendants' motion to vacate the third attachment.* A preliminary question arises whether or not the defendants have waived an appeal from the order by executing the forthcoming bond of $10,000.00.

In the opinion of the Chief Justice it is declared that, as the defendants (defendant, Joe Fisher, Inc.?) had given a bond for the goods attached, and had shipped them out of the State, *before the demurrer to the complaint was heard by his Honor, Judge Dennis*, upon the authority of the case of *Du Rant v. Brown Motor Co.*, 147 S. C., 88, 144 S. E., 705, 708, the defendants had waived their right to appeal from the order refusing to dissolve the attachment.

I do not think that this is the law or that the *Du Rant case* so holds. In that case the action was in claim and delivery, by a resident of a certain county against a resident of the same county, and was brought in that county; the chattel was for the moment located in a different county, and was seized by the Sheriff of the county in which the action was brought; the defendant gave a forthcoming bond without raising any objection to the seizure by the Sheriff, who was without authority outside of his own county. This Court held that, by the execution of the bond, the defendant had waived the irregularity of the seizure. The distinction between that case and the case at bar is that in the latter the defendants moved promptly to dissolve the attachment, and appealed from an adverse order. *Thereafter* the forthcoming bond was executed. The defendants exercised with vigilance every right which they had—they had the right to move a dissolution of the attachment and did so promptly; they had

the right to appeal from the adverse order and promptly did so; and, when the forthcoming bond was given, the appeal was pending and undecided.

It is manifest that the defendants did not intend to waive their insistence upon the invalidity of the attachment by giving the bond; in fact, the invalidity of the attachment, if such had been adjudicated upon the appeal, would have been a complete defense to an action which the plaintiff might have brought upon the bond. Their position, therefore, was in aid of a defense to such possible action.

Not only this, but, to hold that the defendants have waived their attack upon the attachment by giving the bond, it must follow that they have waived all right to pursue the plaintiff upon the attachment bond which he executed. It provides that the bond shall become effective *if the attachment be set aside*. If the appellate Court should hold that his Honor, Judge Sease, should have granted the defendants' motion to dissolve the attachment, the status which would have been created by a proper decision of the motion should be deemed to have existed at that time.

In *Young v. Gray*, Harp., 38, cited in the *Du Rant case*, the Court said: "But it is equally clear that *the motion comes too late after appearance and plea to the merits*. The general rule is, that, by appearing and pleading to the action, the defendant waives all exceptions to the form or regularity of the writ. * * * The defendant did appear and plead; and according to the rule, all objections to the regularity of the writ were waived, *and cannot now avail the defendant*."

In the *Du Rant case* it is said: "In *Callender v. Duncan*, 2 Bailey, 454, the Court held that, if the defendant in attachment appear and plead to the action, he cannot *afterwards* move to dismiss the proceeding on the ground that there had been no sufficient attachment to make him a party."

From which it seems clear that, if the motion to dissolve the attachment be made *before* answering to the merits, the

error in refusing the motion may be urged on appeal notwithstanding the execution of a bond.

It seems unfair that if, by an erroneous decision of the defendant's motion to dissolve an attachment, the defendant is driven to the necessity of executing a forthcoming (or *dissolution,* which appears the better term) bond, he should be deprived of the right to a position correctly taken by him in the first instance.

It appears to me that the question is absolutely concluded by the case of *Bates v. Killian,* 17 S. C., 553. In that case the attachment had been levied and the defendant had given a dissolution bond under Sections 516, 517, Code Civ. Proc. 1922 (then Sections 264, 265) ; subsequently the defendants moved to discharge all three of the attachments, upon affidavits served. The appellants resisted the discharge of the first, upon the ground that, the defendants having adopted the proceeding provided in the Code for the surrender of the property, and having thereby obtained possession, they had waived their right to assail the attachment on any ground, and therefore that their motion as to this attachment should be refused. The Circuit Judge overruled this position and discharged all three of the attachments, including the first. The Court held that the Circuit Judge was right in overruling the plaintiff's position, saying:

"The authorities elsewhere, it will be observed, are conflicting, with strong reasons on either side. This being the first case in this State, we must mark out a course for ourselves. When we consider the purpose and intent of the proceeding under Section 265 of the Code, we can see no good reason why the adoption of that proceeding should forfeit the right on the part of the defendant to impeach the legality of the attachments afterwards. It is true that that provision is founded on the idea that the attachment was properly issued and has secured a valid lien on the property attached, and the plaintiff is not required to release the lien except upon the condition that he is furnished with another security

—and this is furnished by the undertaking which that section requires, the consideration of this undertaking being the release of the lien already secured.

"But suppose the attachment in truth and fact had been irregularly or improvidently issued, so much so as to render it invalid, had a motion been made in the first instance to vacate it, should the fact that the defendant had released the property by his bond to the Sheriff cure these defects, and render that legal which under the supposition made is utterly illegal? Such should not be the result, unless for some controlling reason. The proceeding under this section is a prompt proceeding by which the defendant may at once release his property. It may be in many cases of the utmost importance to the defendant that the release should be had at once, where delay would be ruinous. Hence he is allowed to obtain the release from the Sheriff, an officer near at hand, and before whom prompt action can be taken, whereas his motion to vacate must be made before a Judge, sometimes at an inconvenient distance and with delay. Under such circumstances why should the defendant be expected to avail himself of this prompt relief, at the peril of legalizing the attachment?

"The attaching creditor, when he has secured a legal lien, of course ought not to be required to give it up, except upon an equivalent, but at the same time, if the lien is invalid because the attachment is illegal, why should he be entitled to hold the substituted security, which he has obtained upon a condition which in fact never existed? There can be no reason except that inasmuch as the remedy under Section 265 is based upon the presumption that there is no valid objection to the attachment a defendant resorting to it is supposed to have assented to its correctness. Admitting this to be true, does it follow that a defendant should also be regarded as having thereby waived all right to impeach the attachment afterwards?

"There are cases where a failure to take advantage of alleged defects or to assert rights will entail forfeiture, but

this is on the principle that some right has attached to the other party in consequence of such failure which it would be inequitable now to divest, or some remedy omitted, or injury would ensue which but for the failure might have been provided against. In such case the doctrine of estoppel should apply. But the case before the Court is not a case of that character. The bond which the plaintiffs hold as security for their debt, stands in the place of the property which that bond released. Had no bond been given, if the attachment was improvidently issued, the lien which it had obtained was an invalid lien and could have been vacated at any time, in some of our sister States, even after judgment. This being so, there can be no good reason why the bond, which occupies the place of the property, should not also be released, when surrounded by the same circumstances which if present would release the property. In New York it was held that the giving up of an undertaking to obtain the return of the property attached will not preclude the defendant from moving to set aside the attachment for irregularity or on the merits. 2 Wait Prac., 184.

"Our Code after providing for the surrender of the attached property as found in Sections 264 and 265 concludes the latter section as follows: 'In all cases the defendant may move to discharge the attachment as in the case of other provisional remedies.' This language is broad and comprehensive; it includes expressly all cases. It is found as a part of one of the Acts of the Legislature, and embracing, as it does, all cases of attachment, we have no power to limit or contract it to one or two classes of cases only."

See, also, Waples, Attach., § 712, etc.; Drake, Attach. (7th Ed.), § 318.

*Bates v. Killian* is cited with approval by both of these text-writers and in *Kennedy v. Dunbar*, 46 S. C., 517, 24 S. E., 383.

In *Able v. Hall*, 101 S. C., 24, 85 S. E., 165, 166, the Court, citing *Bates v. Killian*, said: "It has been held that the

making of such a bond does not amount to a waiver of the right to move to vacate the attachment."

This should leave entirely open for discussion and decision the attack of the defendant, Joe Fisher, Inc., upon the third and only surviving attachment.

II. One of the grounds upon which the motion to dissolve the attachment was made is that the complaint and the affidavits and exhibits do not comply with the Statute which requires that a cause of action against the defendants appear. Code Civ. Proc. 1922, § 502.

I think, therefore, that the attachment may be disposed of by a disposition of the demurrer to the complaint. In my opinion, the demurrer should have been sustained and the complaint dismissed, and of course the attachment would fall with the complaint. In the consideration of the demurrer, the validity of the complaint must be determined from its terms, unaided by anything contained in the mass of affidavits and exhibits. The question then to which I shall address myself is, "Does the complaint state facts sufficient to constitute a cause of action?"

A cause of action "consists in a right in the plaintiff, a correlative duty or obligation resting on the defendant, and some act or omission done by the latter in violation of the right." 1 Cyc., 641.

"The cause of action is the right claimed or wrong suffered by the plaintiff on the one hand, and the duty or delict of the defendant on the other, and these appear by the facts of each separate case." *Rodgers v. Mutual Endowment Assessment Ass'n,* 17 S. C., 406, quoting Pomeroy; *Hayes v. Clinkscales,* 9 S. C., 453.

Looking then to the complaint, it appears that the rights of the plaintiff are declared in paragraph 3, in substance, that plaintiff made certain improvements on his building and leased it to Cannon & Fetzer Company for a period of five years, two and a half years of which were unexpired, in consideration of a rental of $425

per month to be paid to plaintiff. Paragraph 4 simply connects the defendants with the obligations of the lessees.

The rights of the plaintiff as declared in paragraph 3 are to receive from the lessees a monthly rental in return for the lessees' occupancy; the obligation of the lessees and their assignees, the duty to pay the monthly rental.

Paragraph 5 alleges, in substance, that plaintiff has been damaged because defendants are packing *their goods* for shipment out of the State, "in derogation of the rights of this plaintiff" under his lease, without making any "satisfactory arrangements" with plaintiff in regard to the payment of his rental and with the purpose and intent to defraud him out of said rent and improvements. It was intended to set forth the acts or omissions of the defendants violative of their obligations.

The pleader has therefore clearly attempted to follow the rule, to declare the rights of the plaintiff, the correlative obligations of the defendants, and their breach by the defendants.

In the attempt to declare the breach by the defendants of their obligations, paragraph 5 alleges:

(1) That the defendants are "packing up *their* stock of goods." If the stock of goods belonged to the defendants, as is thus alleged, I see no reason why their absolute dominion over their own property would not include the right to dispose of them as they pleased. The complaint contains no allegation of any right of the plaintiff to prevent the defendants from packing up their goods, or that the defendants owed any duty to the plaintiff not to do so.

(2) That the defendants are "preparing and about to ship and remove said merchandise beyond the limits of this State." If such was to the interest of the defendants, and I assume that it was, for the same reason of absolute dominion over their own property, I see no reason why they did not have the right to dispose of them as they pleased. The complaint contains no allegation of any right of the plaintiff to

prevent the defendants from shipping and removing their goods beyond the limits of the State or that the defendants owed any duty to the plaintiffs not to do so.

(3) That the foregoing acts are "in derogation of the rights of the plaintiff under the lease"—an allegation which is nothing more than the statement of a legal conclusion with no supporting facts, a matter for the Court to determine upon a construction of the lease.

It is further alleged in the complaint that the acts of packing up the goods and shipping and removing them from the State are about to be done "without making any satisfactory arrangements with plaintiff in regard to the payment of his said rental." There is nothing in the complaint upon which the Court could surmise or infer that the contract relations between the parties imposed upon the defendant the obligation to make any such "satisfactory arrangements" or that the plaintiff had the right to demand that they be made. The lease is not alleged to contain any provision from which such right of the plaintiff or such duty of the defendants could possibly be inferred. It appears that the plaintiff was willing to let the lessees into possession under that lease, and it is presumed to have embodied all the conditions under which the tenancy was created. There is no allegation of a single default by the lessees in the payment of the rental, and there is nothing from which it might be inferred that, if they moved everything out of the store and shipped it to New York, they would not still be liable and financially responsible to take care of the future installments.

It is further alleged that the acts referred to are being done "with the purpose and intent to defraud plaintiff out of said rent and improvements," a statement without the support of a single fact which would justify what is barely the statement of a legal conclusion. See *Drennan v. Brown,* 112 S. C., 340, 100 S. E., 75; *Brookland Bank v. Martin,* 105 S. C., 72, 89 S. E., 546; *Donaldson v. Temple,* 96 S. C.,

240, 80 S. E., 437; *Gem Chemical Co. v. Youngblood,* 58 S. C., 59, 36 S. E., 437; Pom. Code Remedies, 789.

To pack up goods, to prepare to ship goods out of the State, to fail to "make *satisfactory* arrangements," are *per se* neither illegal nor fraudulent, alone nor in combination. Before any of them can constitute the invasion of a right, that right to forbid or require must exist. Such right has not been made to appear by the complaint.

So far as the complaint shows, the matured right of plaintiff to receive the monthly rental in return for the tenant's precedent or current occupancy has not been invaded. No rent is alleged to be past due and unpaid.

It must be assumed that, when plaintiff made his lease, he then made what to him seemed "satisfactory arrangements in regard to the payment of his rentals." While it may not be pertinent to the consideration of the demurrer, it is nevertheless interesting to note that plaintiff then required a bond, and that the complaint was fathered, not by any want of "satisfactory arrangements" for the protection of the plaintiff-landlord, but rather because of its want for the protection of the sureties, who, when they became sureties, apparently failed to make "arrangements" for their own protection which now prove "satisfactory" to them.

The plaintiff contends that the complaint states a cause of action for a debt not due, as is authorized under Section 509, Code Civ. Proc., 1922. That section provides that, "whenever a debt is not yet due, *and it appears to the satisfaction of a Circuit Judge, the Clerk of the Court of Common Pleas, or Magistrate, by affidavit,* that the debtor * * * has removed or is about to remove any of his property from this State with intent to defraud his creditors * * * it shall be lawful for the plaintiff forthwith to institute suit upon such debt or cause of action, and for the said Circuit Judge, Clerk, or Magistrate to issue his warrant of attachment as if said debt were then due and payable," etc.

As a condition precedent to the bringing of such a suit, it must first be made to appear by affidavit to the satisfaction of the Court that the debtor has done or is about to do the thing and with the intent set out in the Statute.

Discussing this Statute, Mr. Justice McGowan, in *Correll v. Georgia Construction Co.,* 37 S. C., 444, 16 S. E., 156, 158, said: "It is manifest that these requirements were intended to be conditions precedent; that they were to be complied with before the action could issue on the debt not due. Did the plaintiffs bring themselves within this act, before they commenced action on November 17, 1888? We are constrained to say that we see no evidence of it. There was but one affidavit, and that was made to procure an attachment against the defendant as a foreign corporation. The 'showing' for an attachment is not necessarily identical with that for leave to sue on a debt not due. The existence of one does not prove the other."

In this case, the suit was instituted on May 18, 1927, and the "affidavit to obtain attachment," on which the present attachment was based, was not filed until May 23d, five days after institution of the suit.

The complaint alleges and prays for damages, and it is nowhere in the complaint stated that these "damages" are "not yet due."

Even if this "affidavit to obtain attachment" may be referred to to establish conditions precedent on which to base a suit instituted five days earlier, this affidavit merely sets out that the four defendants "are justly indebted to deponent in the sum of five thousand ($5,000.00) dollars, and deponent believes he is justly entitled to recover the said sum." But the Statute (Section 502) requires, not only that the affidavit shall specify "the amount of the claim," but also "the grounds thereof." Nowhere in the affidavit is it specifically stated what this $5,000 debt is. There is a reference near the end of the affidavit to plaintiff's "rent and debt mentioned in paragraph one hereof"; but we are left to conjec-

ture whether "rent" and "debt" are intended to be synonymous. If so, then the only "rent" referred to in the affidavit is unearned rent for "the next two and a half years" at $425 per month, or a total of $12,750. There is nothing to identify this "unearned rent" with the "indebtedness" mentioned in the first paragraph of the affidavit or with the "damages" sought by the complaint. The affidavit does not refer to damages, nor does it state any facts whereon could be based a recovery of damages. Furthermore, unearned rent is not a "debt."

"Rent does not accrue to the lessor *as a debt* until the lessee has enjoyed the use of the land." 24 Cyc., 1137.

"Rent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises let." *Filene's Sons Co. v. Weed,* 245 U. S., 597, 38 S. Ct., 211, 213, 62 L. Ed., 497.

"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, *a covenant to pay rent creates no debt until the time stipulated for the payment arrives.* The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of *debitum in præsenti solvendum in futuro* * * * but is a mere possible future demand. Both its existence and amount are contingent upon uncertain events." *In re., Roth & Appel* (C. C. A., 2nd Cir.), 181 F., 667, 669, 31 L. R. A. (N. S.), 270.

This opinion was submitted as a dissenting opinion to that of the Chief Justice; having been concurred in by Justices Blease, Stabler, and Carter, it becomes the opinion and judgment of the Court.

The judgment of this Court is that the order of his Honor, Judge Sease, refusing the motion of the defendant for an order dissolving the attachment, be reversed, and that the order of his Honor, Judge Dennis, overruling the demurrer of the defendant to the complaint be also reversed; the results being that the attachment is dissolved and the complaint dismissed.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

MR. CHIEF JUSTICE WATTS (dissenting): This action was commenced on May 18, 1927, by the service of a summons, complaint, affidavit to obtain attachment, and warrant of attachment upon Harry Rittoff and Herbert Wile. On the same date the attachment was levied. On May 20, 1927, an amended summons, amended complaint, amended affidavit to obtain attachment, and a new warrant of attachment were served on the same persons and a second attachment was levied. On May 23, 1927, on the plaintiff's motion the resident Judge passed an order vacating the two attachments previously levied without prejudice to the plaintiff's rights to take such other steps in the assertion of his rights as he may deem proper. On that date this order of Judge Sease, with the amended complaint, a second amended affidavit to obtain attachment, and a third warrant of attachment were served on the same two persons; and a third attachment was levied. On May ...., 1927, the amended summons, amended complaint, the third affidavit to obtain attachment, and the third warrant of attachment were served personally on Herman Wile as an individual and as an officer of Joe Fisher, Inc. Since some of the questions presented by the appeal involve the Sheriff's returns, all three are hereinafter set out. B. Gunzberg has never been served and has never appeared.

Upon notice supported by the answer of the served defendants and their demurrer and affidavits, these defendants moved to vacate the attachment on June 4, 1927. On June 24, Judge Sease filed his order refusing to vacate the attachment, expressly declining to pass upon the demurrer.

The appellants served notice of intention to appeal from the order refusing to vacate, and later served notice of a motion for an order sustaining their demurrer. The demurrer was heard by Judge Dennis at the October, 1927, term, and on November 21st he filed a formal order overruling it. The appellants in due time served notice of intention to appeal from that order, and this appeal is from both orders—that of Judge Sease refusing to vacate the attachment, and that of Judge Dennis overruling the demurrer.

On August 23, 1927, the defendant, Joe Fisher, Inc., replevied the attached chattels by filing a $10,000 surety bond, and the chattels were packed and shipped out of the State.

The questions involved as stated by the appellants are:

"1. Was the attachment rightly sustained against the motion to vacate and the demurrer to the complaint where it appeared:

"(a) The complaint and affidavit alleged only that (1) one defendant is a domestic corporation and the others non-residents; (2) plaintiff leased a storehouse for five years to Cannon & Fetzer Co. at $425 a month, and 2½ years are unexpired; (3) the defendants are continuing business in it as successors of Cannon & Fetzer Co., and (4) the defendants are packing up their stock of goods to remove them from the State 'without making any satisfactory arrangements with the plaintiff in regard to the payment of his said rental and with the purpose and intent to defraud him of his said rent and improvements, all to his damage in the sum of $5,000,' there being no rent past due, and no breach of any contractual provision assigned or claimed.

"(b) The attachment was sued out by the plaintiff only at the urgency of, and on condition of being saved harmless

by, three persons who had guaranteed to him the payment of the rent by Cannon & Fetzer Co., when the lease was originally made, and who, in writing employed the attorneys to attach in the name of R. Skalowski, thereby seeking to use the writ of attachment to substitute the defendants for themselves in the liability they voluntarily assumed.

"(c) The Sheriff, instead of levying an attachment, evicted defendants, took the keys, and excluded them from possession of the premises.

"2. Does a complaint, invoking a written lease, but alleging nothing due under it, no breach of any conditional, and no requirement of maintaining a stock of goods, and claiming damages only on the ground that the defendants 'have made no satisfactory arrangement for the payment of the rent' hereafter coming due, state a cause of action?"

As to the appeal from Judge Sease's order refusing to vacate attachment:

Before Judge Dennis heard the demurrer, the defendants gave bond for the goods attached and shipped the goods out of the State. In the case of *Du Rant v. Brown Motor Co.*, 147 S. C., 88, 144 S. E., 705, we find the able and careful opinion of Mr. Justice Cothran, wherein he quotes various cases from this and other States, and which conclusively decides this appeal from Judge Sease's order.

When the defendants gave bond, they waived the right to set aside the attachment under Section 474 of the Code Civ. Proc., 1922. These exceptions should be overruled.

As to the exceptions to Judge Dennis' order overruling the demurrer:

The respondent is the real party in interest; and, irrespective of his agreement with the guarantors it was and is his duty to bring this action to lessen and minimize his own damages, so that there may not be any question of the measure of liability of the guarantors, if he has to fall back on them.

Where one who has contracted in writing to rent premises is tendered such premises at the proper time, refuses to take the same, and declines to perform his contract, a cause of action immediately arises in favor of the lessor, against the lessee, the prospective tenant, for the full amount of damages, present and prospective, which were the necessary and direct violation of the contract. *Cleveland v. Bryant,* 16 S. C., 634; *James v. Kibler,* 94 Va., 165, 26 S. E., 417; 35 C. J., 1193.

I do not think that the attachment by the Sheriff amounted to an eviction and termination of the lease.

"Attachment and levy upon tenant's personal property so as to discontinue his business, made without objection by tenant, acquiesced in by landlord's agent, and under which goods were surrendered to subsequently appointed receiver in bankruptcy, held not to amount to eviction, so as to defeat claim for rent." (Syllabus) *In Re., Bradley* (D. C.), 225 F., 307.

Whether there has been an eviction in any case depends on the intention on the part of the landlord, as shown by the evidence. *McCormick v. Potter-Herrick Wall Paper Mills,* 147 Ill. App., 487.

The levying of a distress warrant and the locking of the door of the rented premises is not such an interference with the possession of the tenant by the landlord as would constitute an eviction which would defeat a recovery of rent. *Id.*

The levy of a landlord's attachment on property subject to a lien for rent, accompanied by taking possession of the leased premises by the officer to hold the attached property, is not an eviction of the tenant. *Wolf v. Ranck,* 161 Iowa, 1, 141 N. W., 442.

To constitute an eviction of a tenant by his landlord, there must be, not a mere trespass, but something of a permanent character, intending to deprive, and which does deprive, the tenant of the use of the demised premises, or some part thereof. (Syllabus) *Meeker v. Spalsbury,* 66 N. J. Law, 60, 48 A., 1026.

It is true that this Court, in the recent case of *Simon v. Kirkpatrick*, 141 S. C., 251, 139 S. E., 614, 54 A. L. R., 1348, says, "A lease * * * may be terminated by eviction and re-entry, etc.," yet the facts of this case are different from those in the *Kirkpatrick case.*

The defense that a corporation cannot legally enter into a contract of copartnership, where a complaint alleges damages for the breach of the contract assigned to said corporation and its codefendants, should be raised by answer and not by demurrer.

"*Ultra Vires.*—If the defendant wishes to interpose the defense of *ultra vires* in an action by a corporation against him, he should specially plead it. And, in an action against a corporation, the plaintiff need not set out in his complaint or declaration the capacity of the corporation to make the contract sued on. Where the defense of *ultra vires* is allowable to a corporation, the corporation must specially plead it." 5 Encyclopedia of Pleading and Practice, page 95.

"A corporation which had formed a partnership with an individual contracted to sell to defendant goods purchased in part with corporate funds, and on defendant's refusal to receive the goods the corporation, in its own right, and as assignee of its partner, sued for breach of contract. Held, that, though the corporation's contract of partnership was *ultra vires,* this defense could not be raised by defendant, who was charged with knowledge that plaintiff could not enter into a legal partnership, and will be held to have dealt with plaintiff and its partner as joint owners of the property." *Huguenot Mills v. Geo. F. Jempson & Co.,* 68 S. C., 363, 47 S. E., 687, 102 Am. St. Rep., 673.

In rendering the opinion of the Court in the *Huguenot Mills case,* Justice Woods has this to say:.

"At the trial the defendants demurred orally on 'the ground that it [the complaint] does not state facts sufficient to constitute a cause of action, in that the plaintiff sues as assignee of the Greenville Commission Company, an alleged

partnership existing between the Huguenot Mills, a corporation chartered under the laws of the State of South Carolina, and one Herbert Rountree, and under the charter of the Huguenot Mills, and under the law a partnership cannot exist between the said Huguenot Mills and the said Herbert Rountree, and the alleged contract was therefore *ultra vires*."

"In the first exception, the defendants allege that the Circuit Judge erred in overruling the demurrer. The general proposition is well established that a corporation cannot enter into a valid partnership agreement. This implies that such an agreement, made by the corporation, even with the assent of all the stockholders, may be annulled at the instance of the State. It implies that an agreement made by the officers may be annulled or disregarded by the stockholders, and that the officers who embark the corporate funds in such an enterprise would be liable for losses resulting to the corporation as for a breach of trust. It implies that the stockholders could require the officers to take a conveyance from the corporation of its interest in property acquired by an attempted partnership of this kind, and restore the funds used in its purchase. But it does not imply that the corporation does not acquire, as against the outside world, part ownership of property bought in part with corporate funds in the progress of an attempted partnership business. An incident of ownership is the power of sale, and the power to sell implies the power to hold those who agree to buy to perform their agreement or pay damages for its breach. To illustrate, it cannot be doubted, if in this instance the stockholders had brought an action to have the business closed up as *ultra vires*, the Court would have ordered the assets sold, and the contracts for purchases from the concern enforced by suit for the benefit of the corporation. To such suits it would have been idle for those who had purchased or contracted to purchase to deny the corporate right to own and sell the goods. If this were a suit in a partnership name, the defendants' demurrer

would stand on a very different foundation, for the question would then be whether the joint owners could recover when they had sold as an alleged partnership. Even then we think the defendants could not deny the validity of their obligation on that ground. 5 Thompson on Corporations, § 5838; *Connolly v. Union Pipe Co.,* 184 U. S., 544, 22 S. Ct., 431, 46 L. Ed., 679; *Bank v. Hammond,* 1 Rich. Law, 288; *Sandwich Mfg. Co. v. Donahue* [29 Minn., 111], 12 N. W., 354. In the case really presented the corporation sues alone in its own right and as assignee of Rountree. The defendants are charged with knowledge that the plaintiff could not enter into a legal partnership (*Pearce v. R. R. Co.,* 21 How., 441, 16 L. Ed., 184), and that in the contract to purchase they were dealing with the plaintiff and Rountree as joint owners of the property, who as such had a right to sell it. For this reason they cannot now dispute the validity of the contract of purchase, or the liabilities which fell upon them when they repudiated it. The demurrer was therefore properly overruled.

"Substantially the same question was made by a motion for non-suit and in requests to charge. It follows that the first exception as to the   *   *   *   refusal to grant a non-suit, and the first, second, fourth, and fifth exceptions to the charge cannot be sustained."

All exceptions should be overruled, and judgment affirmed.