## STANDARD OIL CO. OF NEW JERSEY v. ELLIOTT et al.

## KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.

### No. 3924.

Circuit Court of Appeals, Fourth Circuit.
Nov. 12, 1935.

George L. Buist, of Charleston, S. C. (Buist & Buist, of Charleston, S. C., on the brief), for appellant.

E. W. Mullins, of Columbia, S. C. (Nelson, Mullins & Grier, of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

On January 2, 1932, the Peoples State Bank of South Carolina was closed by

resolution of its board of directors, and shortly thereafter receivers were placed in charge of its affairs. These receivers, on June 24, 1932, instituted suit in the court below to recover of the Standard Oil Company a balance of $805.40 on account of rent. On August 4, 1932, the oil company filed an answer admitting liability for the rent claimed but setting up five different counterclaims and asking affirmative relief against the receivers. The third and fourth counterclaims were allowed as preferential claims against the funds in the hands of the receivers and are not involved in this appeal. Error is assigned to the action of the court with respect to the other three counterclaims as follows: (1) In not permitting the oil company to set off against liability for rent the indebtedness due it by the bank at the time of its closing; (2) in not holding that the cash assets which came into the hands of the receivers were impressed with a trust in favor of the oil company to the amount of funds deposited with the bank for transmission, amounting to $9,595.83; and (3) in not holding that these cash assets were impressed with a trust in favor of the oil company to the amount of a certified check for $250 drawn on the Peoples National Bank, the payment of which had been assumed by the failed bank. As entirely different legal questions are involved in these several contentions, we shall discuss them separately.

### The Rent Set-Off Claim.

At the time the bank closed, the oil company was occupying certain premises under a written lease from the bank, which did not expire until the October following. This lease provided for an annual rental payable monthly, the monthly installments of which had been paid up to the time of the bank's closing. No question arises with respect to these installments which had been paid, but the oil company claims the right to set off the monthly installments subsequently accruing against the indebtedness of the bank; and the action of the court below in denying this set-off constitutes the company's first ground of complaint on appeal.

We think that the court's action with respect to this was clearly correct. The liability of the oil company for the monthly rental provided in its contract arose out of the right to use and enjoy the property leased, and created no debt until the time for payment had arrived. Watson v. Merrill (C.C.A.8) 136 F. 359, 361, 362, 69 L.R.A. 719; In re Roth & Appel (C.C.A.2d) 181 F. 667, 669, 31 L.R.A.(N.S.) 270. As said by Judge Noyes, speaking for the Circuit Court of Appeals of the Second Circuit in the case last cited: "Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of debitum in præsenti solvendum in futuro. On the contrary, the obligation upon the rent covenant is altogether contingent."

The installments of rent falling due subsequent to the appointment of the receivers were payable to them, therefore, not as debts due the bank, but as the income of property administered by them as officers of the court for the benefit of the bank's creditors. Not only were the installments of rent not owing at the time the receivers were appointed, but there was lacking, also, the element of mutuality essential to set-off. See Hood v. Brownlee (C.C.A.4th) 62 F.(2d) 675, 676. The claim of the oil company arose out of the debt of the bank, and the only liability of the receivers with respect thereto was to apply on it a pro rata portion of the bank's assets under order of court. The liability of the oil company for the subsequently accruing installments of rent was to the receivers, not as representatives of the bank, but as officers of the court administering the property of the bank for the benefit of its creditors. The exact question was before the Supreme Court of South Carolina in the recent

case of Zimmerman v. Home Insurance Co., 175 S.C. 18, 177 S.E. 895; and we thoroughly approve the reasoning as well as the conclusion of Judge Townsend, adopted by that court, in holding that the set-off should not be allowed. He said:

"I do not think this right of set-off should be allowed. In theory, the right of set-off is allowed in such cases on the ground that the real sum owing, or asset of the insolvent, is the balance owing as between mutual debts, and hence that by striking such balance no preference is granted as against the other creditors entitled to the ratable distribution of the estate. So the right of set-off against an insolvent is governed by the state of things existing at the time of the adjudication of insolvency, for then it is that the rights of creditors are fixed. Bank of Anderson v. Allen, 146 S.C. 167, 143 S.E. 646, 60 A.L.R. 580. It is generally held that rent to be earned and accrue in the future is not an existing debt, but a mere contingent liability which may arise in the future. 24 Cyc. 1137. Such a contingent right is not a provable claim in bankruptcy, is not a debt which can be made a basis of an action for attachment (Skalowski v. Joe Fisher, Inc., 152 S.C. [108] 122, 149 S.E. 340, 65 A.L.R. 1427), and, not being ascertained at the adjudication of the insolvency, but its existence and amount depending upon uncertain future events, should not upon principle be allowed as a set-off. Moreover, upon appointment of the conservator, the leased property and the reversion passed to him as the agent or arm of the court, carrying with it the right to rent thereafter to accrue, and it follows that the subsequently accruing rent was owing to the conservator-receiver as officer of the court and as trustee for the creditors. Peurifoy, Receiver, v. Gamble, Receiver, 145 S.C. 1, 142 S.E. 788, 71 A.L.R. 783. This rent, being an asset in equity of the general creditors, should not properly be offset by the debt from or deposit in the defunct bank. I can perceive in such case no ground to depart from the rule that demands to be set off must be mutual and accrue in the same rights." See, also, Farmers' Loan & Trust Co. v. Northern Pac. R. Co. (C.C.) 58 F. 257; Wasson v. White (D.C.) 12 F.(2d) 809; White v. Wasson, 118 Okl. 29, 246 P. 445; Real Estate Board of Baltimore v. Page, 164 Md. 500, 165 A. 701; Partch v. Russell, 199 Iowa 1049, 203 N.W. 8; Maxcy v. City of Washburn, 196 Wis. .566, 218 N.W. 825; note in 71 A.L.R. at page 817.

### The Transmission Item Claim.

The oil company had entered into the following arrangement for the transmission of funds to Columbia, S. C.: Its various filling station operators in the territory in which the failed bank conducted branches would from time to time deliver to these various branch banks cash or cash items representing sales, and receive from them their checks or drafts on the branch at Columbia, paying therefor a charge, which in most instances was one-tenth of 1 per cent. These drafts were then sent to the oil company's office in Columbia and were by it collected from the Columbia branch of the failed bank; the proceeds of the collections being deposited in another bank. Ordinarily, the drafts were in transit to Columbia for only one or two days, but in the period preceding the closing of the failed bank there was some delay due to the congestion of the holiday season, so that seventy-eight of these items, aggregating $9,595.83, were outstanding. Seventy of these were issued on December 30th or 31st, seven on December 28th or 29th, and one on December 24th. The oil company contends that a trust should be declared in its favor for the amount of these items on the cash assets of the bank on the grounds: (1) That no title to the funds deposited for transmission passed to the bank; and (2) that the bank at the time of receiving them was hopelessly and irretrievably insolvent to the knowledge of its officers.

It is perfectly clear that the title to the funds deposited for transmission passed to the bank. It was not the intention of any one that the particular cash and cash items delivered to the various branch banks should be segregated and transmitted by them. On the contrary, these were used for purchasing drafts on the Columbia branch, and a mere debtor and creditor relationship was established to the amount of the drafts. The case in this respect is controlled by our recent decisions in Santee Timber Corporation v. Elliott (C.C.A.4th) 70 F.(2d) 179, 93 A.L.R. 874, and Lindsay v. Elliott (C.C.A.4th) 77 F.(2d) 95. It is "on all fours" with the case of Great Atlantic

& Pacific Tea Co. v. Citizens' National Bank (C.C.A.3d) 66 F.(2d) 883, and we need add nothing to the opinion in that case, which thoroughly embodies our views as to the principles of law involved

■ On the question of declaring a trust because of the receipt by the bank of the funds when it was hopelessly and irretrievably insolvent to the knowledge of its officers, the case is governed by our recent decision in Poole v. Elliott (C.C.A.4th) 76 F.(2d) 772, 775, which related to the same bank, and in which counsel for appellant here were permitted to file brief as amici curiæ. In that case we said: "Where the bank has been hopelessly and irretrievably insolvent over a long period, and the depositor must rely on the rule laid down in such cases as Brennan v. Tillinghast (C.C.A.6th) 201 F. 609, 612; Empire Surety Co. v. Carroll County (C.C.A.8th) 194 F. 593, 605, and Schumacher v. Harriett (C.C.A.4th) 52 F.(2d) 817, 82 A.L.R. 1, to trace the trust funds, i. e., on the presumption that the bank respected the trust and preserved the trust fund, making payments in the meantime from other moneys (obviously a pure fiction in the case of a constructive trust), it is clear that other depositors as to deposits made during this period are entitled in equity to the same relief as petitioner, and in granting relief the court should see that their rights are protected. In such cases, therefore, the establishment of a trust in favor of depositors on the ground of hopeless and irretrievable insolvency would affect a large part of the obligations to depositors and probably all of the cash assets passing into the hands of the receivers; and the court should not entertain a petition asking such relief unless petitioner has acted promptly on learning of the bank's insolvency and before matters have progressed to the point that relief cannot be afforded without injustice to other persons interested in the administration of the estate. Such a case is peculiarly one for the application of the maxim, 'Vigilantibus non dormientibus æquitas subvenit.'"

■ In this case, it appears that no question was raised by the oil company as to the hopeless and irretrievable insolvency of the bank until it filed its answer on August 4th, more than seven months after the closing of the bank. No explanation of this delay is given; and, while it is not possible to prescribe a period for action which can be applied to the different circumstances of all cases, we do not hesitate to say that an unexplained delay of seven months is too great and should bar a depositor seeking a form of relief which, if so delayed, will necessarily result in disrupting in large measure the administration of the insolvent estate.

If the bank here was in fact hopelessly and irretrievably insolvent to the knowledge of its officers and directors, this condition must have extended back to early in November; and, in that case, all persons who deposited funds in the bank and its branches during the period of nearly sixty days have as great an equity in the cash assets which came into the hands of the receivers as has the oil company. If a constructive trust is declared in favor of the oil company on the cash assets passing into the hands of the receivers, there is no reason why these other depositors whose claims have been filed with the court should not be allowed to participate, as they are in like case with it; and, if the oil company desired to raise a contention which, if sustained, would have resulted in a different form of administration for a large part of the assets of the estate, it should have done so promptly and vigorously and not have allowed the administration to proceed without protest along different lines. Here the oil company not only waited for more than seven months before making such claim, but then asserted it merely by way of counterclaim in a suit filed by the receivers, did not ask relief for others similarly situated, and did not bring the counterclaim on for hearing even to the extent of obtaining an order of reference until more than seven months later. Eighteen months additional was allowed to elapse before a report was obtained from the special master; and not until nearly three years after the failure of the bank was the matter brought on for hearing before the District Judge. In the meantime the liquidation of the bank's affairs had gone forward, claims had been proven and allowed, debts had been paid off, and dividends had been paid to general creditors. We think that, under these circumstances, the oil company is in no better position to ask that a trust be declared on the cash assets in favor of depositors, because of the alleged hope-

less and irretrievable insolvency of the bank, than was the claimant in the Poole Case.

### The Certified Check Claim.

The oil company is the holder of a certified check for $250 certified by the Peoples First National Bank, a corporation whose assets were transferred to, and whose liabilities were assumed by, the failed bank when the latter took over the business of the former. There is no contention that the Peoples First National Bank was insolvent when it was taken over by the failed bank; and we know of no theory upon which any part of its assets could be held to be charged with a trust for the payment of an outstanding check which it had certified. McDonald v. Williams, 174 U.S. 397, 401, 19 S.Ct. 743, 43 L.Ed. 1022. When the failed bank took over the assets and assumed the liabilities of the Peoples First National Bank, it became a debtor and nothing more with respect to the certified check. The sale of national bank's assets is not assailed as fraudulent, and there is no basis whatever upon which any of the assets of the failed bank, which constitute a trust fund for the payment of its creditors generally, can be charged with a special trust for the payment of the creditor who holds the certified check.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.