**Moses LIGHTNER, Plaintiff,**

**v.**

**DUKE POWER COMPANY, Defendant and Third Party Plaintiff,**

**v.**

**FORD NEW HOLLAND, INC., Third Party Defendant.**

**Civ. A. No. 3:89–422–16.**

United States District Court,
D. South Carolina,
Columbia Division.

July 20, 1989.

William R. Sims, Strickland Short & Keels, P.A., Chester, S.C., for plaintiff.

Stanley T. Case, Butler, Means, Evins & Browne, Spartanburg, S.C., for Duke Power Co.

Robert A. Bernstein, Turner, Padget, Graham & Laney, Columbia, S.C., for Ford New Holland, Inc.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on motion of third party defendant Ford New Holland, Inc.[1] ("Ford") to dismiss the third party complaint brought by defendant and third party plaintiff Duke Power Company ("Duke") under Fed.R.Civ.P. 12(b)(6) or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. The third-party complaint arises out of the primary action in which plaintiff Moses Lightner ("Lightner") sued Duke for negligence. Lightner alleges that Duke by its agents left a metal bolt on the grounds of a school in Chester County where Lightner was employed as a maintenance man. Lightner alleges that he and another employee were cutting the grass at the school when the other mower operator ran over the bolt and propelled it at a high speed into Lightner's back, causing him permanent injury. Lightner claims that Duke was negligent in the following particulars:

(a) In permitting debris to accumulate at or near where its agents and/or servants had been working;

(b) In failing to inspect for such debris both during and after performing its work;

(c) In failing to warn the Plaintiff of such by signs, personnel, or barricades.

Complaint, at 6.

In its third party complaint Duke seeks indemnification and, in the alternative, con-

---

1. Ford was originally named in the complaint as Ford Motor Company. In its response to the Court's standard interrogatories Ford informed the Court that the corporation charged with manufacturing and distributing tractors under the Ford product name is Ford New Holland, Inc. The Court therefore substitutes Ford New Holland, Inc. as the correct third-party defendant.

tribution from Ford, the manufacturer of the lawnmower. Duke claims that Ford is solely liable for any injury to Lightner under theories of strict liability, breach of warranty and negligence. The third-party complaint also seems to allege that Ford is directly liable to Duke for strict liability, breach of warranty and negligence.

Ford moves to dismiss the third party complaint on several grounds. First, Ford alleges that a third party action under Fed. R.Civ.P. 14(a) is improper if it merely states that the third party defendant is or may be liable to the original plaintiff without stating a claim in favor of the third party plaintiff. Second, Ford claims that indemnity is not proper where, as here, a defendant is sued for its own negligence and is not forced to defend solely against allegations of another's wrongful conduct. Ford also argues in response to the indemnification claim that Duke and it, if liable, are joint tortfeasors and indemnification is therefore barred. Furthermore, Ford claims that Duke may not maintain a direct action against it for strict liability, breach of warranty or negligence for reasons specific to each of those causes of action. Last, Ford claims that, because Lightner's injury occurred before enactment of the South Carolina Contribution Among Joint Tortfeasors Act, S.C.Code Ann. §§ 15–38–10 et seq., the common-law rule denying contribution among joint tortfeasors applies to this action.

In addition, Duke has moved to dismiss the plaintiff as a party because he is not the real party in interest under Fed.R. Civ.P. 17(a) or, in the alternative, to join the South Carolina School Board Insurance Trust as a party pursuant to Fed.R.Civ.P. 19(a).

## I.

Ford resists Duke's indemnity claim based on Ford's alleged negligent manufacture of the lawnmower because Duke is not required by Lightner's negligence claims to defend solely the acts of Ford. According to the allegations of Lightner's complaint, Duke must defend its own alleged negligence in failing to remove the metal bolt

after its agents had completed work on a power transformer on the school property. Duke contends that the sole proximate cause of the accident was the defective lawnmower and that Duke's alleged negligence was at most an indirect cause of the accident. Duke further argues that its alleged negligence is entirely separate from Ford's negligence and that the parties are not joint tortfeasors.

■ If the parties are joint tortfeasors, contribution may be allowed under S.C. Code Ann. § 15–38–20 (Law.Co-op.Supp. 1988), but indemnity is not allowed. *Atlantic Coast Line Railroad Company v. Whetstone*, 243 S.C. 61, 132 S.E.2d 172 (1963). In *Whetstone*, the court noted:

"Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury."

Thus, at least in the absence of a contractual or legal relation between the parties, one who is himself negligent cannot maintain an action for indemnity. *See McCain Manufacturing Corp. v. Rockwell International Corp.*, 695 F.2d 803 (4th Cir.1982). Moreover, in *JKT Co. v. Hardwick*, 284 S.C. 10, 325 S.E.2d 329 (Ct.App.1984), the state court of appeals disallowed indemnification for the costs of a successful defense because the party seeking indemnity was sued for its own acts of negligence. The court noted:

[The parties seeking indemnity were] defending against their own alleged wrongful acts, which if proven, would have barred them from seeking indemnification over against Celotex. Their liability upon the allegations of the complaint would not have been constructive, vicarious, derivative, or technical, but rather on account of the 'active participation in the wrong.' Because they would not have been entitled to indemnification if found liable on the claim, neither are they entitled to indemnification for ex-

penses of litigation incurred in successfully defending against the claim.

*Id.* at 16, 325 S.E.2d at 333 (citation omitted).

■ The Court first notes that Lightner has alleged against Duke no cause of action arising from the allegedly defective condition of the lawnmower; instead Lightner has asserted only the negligence of Duke's own employees. Applying the principles set forth above to Duke's indemnity claim based on negligence, the Court concludes that, if it is determined Duke's negligence proximately caused Lightner's injury, whether solely or in conjunction with Ford, Duke would not be entitled to indemnification for it would itself be negligent; moreover, it has alleged no contractual or legal relationship with Ford. *Whetstone,* 243 S.C. 61, 132 S.E.2d 172. Alternatively, if Duke establishes Ford is the sole cause of the injury, Duke would not be entitled to indemnification for its liability because it would have none; it also could not be indemnified for expenses incurred in successfully defending the action because it would have defended only against acts of its own negligence. *JKT,* 284 S.C. 10, 325 S.E.2d 329. It would not have defended against negligence imputed to it as the result of a tort committed by Ford, but instead would have defended against its own conduct using Ford's negligence as a defense to causation. Duke's claim for indemnification based on Ford's alleged negligence, therefore, is dismissed.

Likewise, Duke cannot maintain an action against Ford for negligently causing Duke to be sued. To the extent, if any, Duke's third-party complaint alleges that Ford's negligent manufacture of the lawnmower caused Duke to be sued by Lightner, it is dismissed for the same reasons the indemnification claim based on negligence is dismissed. Moreover, Duke does not allege and the Court does not discern any duty flowing from Ford to Duke to produce a lawnmower free from defects. Furthermore, Duke, if liable to plaintiff, will have suffered only intangible economic loss which is not recoverable in a negligence action. *2000 Watermark Associa-*

*tion, Inc. v. The Celotex Corp.,* 784 F.2d 1183 (4th Cir.1986).

■ Duke also claims that Ford is liable for indemnification based on strict liability and breach of warranty. Duke relies primarily on *Stuck v. Pioneer Logging Machinery Co.,* 279 S.C. 22, 301 S.E.2d 552 (1983). In *Stuck* the South Carolina Supreme Court held that "a right of indemnity exists whenever the relation between the parties is such that either in law or equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join." *Id.* at 24, 301 S.E.2d at 553. In *Stuck,* the indemnitee ("buyer") bought a used and modified truck from the indemnitor ("seller") on the seller's assurance that the truck was suitable for hauling logs. During the first attempt to so use the truck, the buyer's employee depressed the brakes, lost control of the vehicle and had a serious accident. After settling the claim brought by a man killed in the accident, the buyer sought indemnity from the seller. The Supreme Court upheld the lower court's indemnity award. It concluded:

[Buyer's] action is not based on negligence. He asserts that [seller] is liable on grounds separate from any purported fault of his: [seller] sold a defective product in an unreasonably dangerous condition, and it breached its warranty that the truck was roadworthy. This action is not based upon any claimed right of indemnity from a joint tortfeasor. Rather, it is an action to recover damages sustained by [the buyer] from [the seller's] failure to ensure the safe condition of the equipment it sold [the buyer]. Under the facts of this case, [the buyer's] failure to discover and correct the latent defects and correct [the seller's] breach of warranties cannot excuse the breach and defeat [the buyer's] claim.

*Id.,* 301 S.E.2d at 553. Duke claims that under *Stuck* it has a claim for indemnity based on strict liability and breach of warranty because the allegedly defective lawnmower was the sole cause of the injury in

the same way that the defective truck in *Stuck* was the sole cause of the damage incurred by the buyer as a result of the accident and ensuing lawsuit.

The Court concludes that *Stuck* is inapplicable here because, unlike the buyer in *Stuck*, Duke has no standing to assert, either directly or under the rubric of indemnification, a cause of action against Ford for strict liability or for breach of warranty. As to the strict liability claim, only a "user or consumer" of a defective product can base a cause of action on strict liability. S.C.Code Ann. § 15–73–10 (Law.Co-op. 1976). In *Stuck*, the plaintiff was a user and consumer of the truck. Here, Duke was not a user or consumer of the allegedly defective product, the lawnmower, and therefore cannot avail itself of the statute.

With respect to Duke's breach of warranty cause of action, "[a] seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by the breach of the warranty." S.C.Code Ann. § 36–2–318 (Co-op.1976). Here, Duke does not fall within the category of persons who may bring a breach of warranty action against Ford. In *Stuck*, the plaintiff was the purchaser and user of the goods and he suffered property damage. Duke was neither the user nor the consumer of the lawnmower and it has suffered no damage to its person or property as a result of the alleged breach of warranty. Duke therefore cannot maintain an action either directly or under the rubric of indemnity against Ford based on breach of warranty.

Because the Court dismisses Duke's indemnification, negligence, strict liability and warranty claims, it does not reach Ford's contention that these claims cannot be brought in a third-party complaint.

## II.

Ford also contends that Duke may not maintain a cause of action for contribution because the South Carolina Uniform Contribution Among Tortfeasors Act, S.C.Code Ann. §§ 15–38–10 *et seq.* (Law.Co-op.Supp. 1988) ("the Act"), does not apply to this action. Instead, Ford submits the common-law rule barring contribution among joint tortfeasors applies here. *Horton v. United States*, 622 F.2d 80 (4th Cir.1980). The events giving rise to Lightner's action against Duke took place on or about October 7, 1986. The Act became effective on April 5, 1988, and "applies to those causes of action arising or accruing on or after the effective date of this act." Uniform Contribution Among Tortfeasors Act, 1988 S.C. Acts 432, § 10 (1988). Duke filed its third party complaint against Ford on March 10, 1989. The issue is whether the Act applies to a contribution action that is brought after the effective date of the Act but in which the claimant seeks contribution for liability that accrued or arose before the effective date of the Act.

■ This issue is before the Court under its diversity jurisdiction and therefore the Court is to apply the substantive law of South Carolina. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There appears to be no controlling precedent in South Carolina on this issue. In the exercise of its diversity jurisdiction, this Court's duty as to a question of substantive law the South Carolina courts have not yet ruled on is to foretell the South Carolina Supreme Court's decision if presented with the same question. *Wilkie v. Home Security Life Insurance Co.*, 514 F.Supp. 896 (D.S.C.1981).

The language used to define the applicability of the Act is ambiguous. The phrase "those causes of action arising or accruing on or after the effective date of this act" means either those underlying tort actions giving rise to a right of contribution among joint tortfeasors or those causes of action for contribution available to joint tortfeasors, if the two causes of action are deemed to arise at different times. If the contribution cause of action arises when the common liability of the tortfeasors arises, however, then the Act unambiguously requires prospective application and it would not authorize Duke to maintain its contribution claim.

In South Carolina, "there is a presumption that statutory enactments are to be

considered prospective rather than retroactive in their operation unless there is a specific provision or clear legislative intent to the contrary. No statute will be applied retroactively unless that result is so clearly compelled as to leave no room for reasonable doubt." *Hyder v. Jones*, 271 S.C. 85, 88, 245 S.E.2d 123, 125 (1978). Changes in procedural, rather than substantive, law are an exception to this rule "but that exception does not reach a case where before the statute there was no remedy whatever. To supply a remedy where previously there was none of any kind is to create a right of action." *Id.* The Act here evinces no clear legislative intent that it be applied retroactively and the Act creates a remedy where none existed before in providing for a right to contribution. Consequently, application of the statute here would violate this well-settled rule of statutory construction if Duke's "cause of action" for contribution arose before the effective date of the statute.

The Court must determine, therefore, when a cause of action arises under the Act. The Act provides:

(A) Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury ... there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(B) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability.

S.C.Code Ann. § 15–38–20 (Law.Co-op. Supp.1988). This language is taken from the Uniform Contribution Among Tortfeasors Act and has been adopted in substantially similar form by other states. A majority of the courts that have decided when a contribution cause of action arises have concluded that it arises when the underlying tort is committed. *See, e.g., Slaughter v. Pennsylvania X–Ray Corp.*, 638 F.2d 639 (3rd Cir.1981) (applying Pennsylvania law); *Ogle v. Craig Taylor Equipment Co.*, 761 P.2d 722 (Alaska 1988); *Distefano v. Lamborn*, 46 Del. 195, 81 A.2d 675 (1951); *F.H. Ross & Co. v. White*, 224 Ga. 324, 161 S.E.2d 857 (1968); *Peacock Construction Co. v. Montgomery Elevator Co.*, 121 Ga.App. 711, 175 S.E.2d 116 (1970); *Van Slambrouck v. Economy Baler Co.*, 105 Ill.2d 462, 86 Ill.Dec. 488, 475 N.E.2d 867 (1985); *Coos–Curry Electric Cooperative v. Curry County*, 26 Or.App. 645, 554 P.2d 601 (1976); *Massey v. Sullivan County*, 225 Tenn. 132, 464 S.W.2d 548 (1971); *Shiflet v. Eller*, 228 Va. 115, 319 S.E.2d 750 (1984).

In *Shiflet, supra,* the Virginia Supreme Court addressed the issue *sub judice.* That court found the contribution statute inapplicable because application of the statute would have retroactively impaired substantive rights of the contribution defendant. The court distinguished between a "cause of action" and a "right of action." "A right of action is a remedial right to presently enforce a cause of action; operative facts giving rise to a right of action comprise a cause of action." 319 S.E.2d at 754. The court concluded that a contribution "cause of action" arises before the "right of action." It decided:

"[T]here is a valid distinction between the accrual of the equitable, *inchoate* right to contribution that arises at the time of jointly negligent acts and the maturation of the right to *recover* contribution that arises only after payment of an unequally large share of the common obligation." Stated differently, the right to recover contribution "arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable," while the cause of action for contribution arises at the time of the jointly negligent acts. "Once in being, although contingent, subordinate, or inchoate, [the cause of action] has an existence in contemplation of law until it is no longer needed as a resource to which the joint tortfeasor may look for relief from an inequitable burden placed upon him by reason of the refusal of another to perform such other's duty by paying his honest share of the common obligation." This cause of action is a substantive right.

319 S.E.2d at 754 (citations omitted; emphasis in original).

The Court concludes that *Shiflet* correctly describes the nature of a cause of action, a right of action and a right to contribution and that the South Carolina Supreme Court would agree. A "cause of action" in South Carolina is defined as "'a legal wrong threatened or committed against the complaining party.'" *State v. Piedmont & N. Ry. Co.*, 186 S.C. 49, 194 S.E. 631, 633 (1938) (citation omitted). It is composed of three parts—"'a right in the plaintiff, a correlative duty or obligation resting on the defendant, and some act or omission done by the latter in violation of the right.'" *Skalowski v. Joe Fisher, Inc.*, 152 S.C. 108, 149 S.E. 340, 344 (1929) (citation omitted). The court in *Skalowski* further stated that "'[t]he cause of action is the right claimed or wrong suffered by the plaintiff on the one hand, and the duty or delict of the defendant on the other, and these appear by the facts of each separate case.'" *Id.* (citation omitted). The remedy sought to redress the cause of action is entirely separate from the cause of action itself and it is "'governed by different rules and principles.'" *Wilson v. Gregory*, 189 S.C. 62, 200 S.E. 358, 360 (1938). A "cause of action" may exist before the aggrieved party's "right of action" accrues. *Pharr v. Canal Insurance Co.*, 233 S.C. 266, 104 S.E.2d 394 (1958).

■ This Court holds that a right to contribution, and hence a cause of action for contribution, arises when the underlying tort giving rise to a common liability occurs. This inchoate right matures into a complete and enforceable right of action only after a tortfeasor pays more than his pro rata share of the judgment. The Act creates the right to contribution in express terms: "[W]here two or more persons become jointly or severally liable in tort for the same injury ... there is a right of contribution among them even though judgment has not been recovered." S.C. Code Ann. § 15–38–20(A) (Law.Co-op.Supp. 1988). The Act limits the enforceability of this right, however, to "a tortfeasor who has paid more than his pro rata share of the common liability." *Id.* § 15–38–20(B). Thus, the inchoate right accrues when the common liability arises, but the remedy is not available until a tortfeasor pays more than his share of the judgment.

■ Here, because the alleged common liability and hence the inchoate right to contribution arose before the effective date of the Act, application of the Act would constitute a retroactive, and invalid, application. Some courts (the minority view) have held that application of the contribution statute in similar circumstances is not a retroactive application because the rights affected are not substantive and do not become substantive until a tortfeasor pays more than his share of the judgment. *See, e.g., Augustus v. Bean*, 56 Cal.2d 270, 14 Cal.Rptr. 641, 363 P.2d 873 (1961); *Coniaris v. Vail Associates*, 196 Colo. 392, 586 P.2d 224 (1978); *Village of El Portal v. City of Miami Shores*, 362 So.2d 275 (Fla. 1978); *National Mutual Insurance Co. v. Whitmer*, 70 Ohio St.2d 149, 435 N.E.2d 1121 (1982). This Court declines to follow these decisions because it believes the South Carolina Supreme Court would apply the Act prospectively only.

In *Schall v. Sturm, Ruger Co., Inc.*, 278 S.C. 646, 300 S.E.2d 735 (1983), the South Carolina Supreme Court declined to apply the then-recently adopted strict liability statute under similar circumstances. The court was unable to specify when "inchoate strict liability can be deemed to exist." *Id.* at 650, 300 S.E.2d at 737. It described the evolution of a strict liability cause of action in the following terms: "Strict liability would be best analogized to a legal status: inchoate at the moment when the product leaves the seller's hands in a defective condition that is unreasonably dangerous; ripe for determination at the instant of injury; and fixed by action and final judgment." *Id.* at 649, 300 S.E.2d at 736. The court held that the statute did not apply to a product that entered the stream of commerce before the statute's effective date, even though only an inchoate liability of the manufacturer or seller would be affected.

Like the court in *Schall*, this Court concludes that application of the contribution statute to this action would be retroactive

because it would affect the inchoate right to contribution among tortfeasors that arises at the time the underlying tort is committed. Here, the underlying tort and the cause of action for contribution arose, if at all, simultaneously and before the effective date of the Act; the Act therefore does not apply. Accordingly, the Court interprets the phrase "those causes of action arising or accruing on or after the effective date of this act" to refer to the causes of action that arise when a tort is committed, that is, both the tort cause of action and the contribution cause of action. Ford's motion to dismiss is granted.

## III.

■ There is also pending Duke's motion to dismiss Lightner on the ground that he is not the real party in interest under Fed. R.Civ.P. 17(a) or, in the alternative, to join the South Carolina School Board Insurance Trust ("the Trust") as a party plaintiff in this action pursuant to Fed.R.Civ.P. 19(a). Lightner has not responded to Duke's motion. Accompanying Duke's motion is a letter from the Trust indicating that it has paid workers' compensation to Lightner for the injuries that he seeks to recover for in this action. The Court is unable to determine from the record before it whether the Trust is a total or partial subrogee; nevertheless, it grants Duke's motion to join the Trust as a party plaintiff in order to give Duke an opportunity to present all defenses it has against the real party in interest, to prevent a multiplicity of lawsuits if Lightner is found not to be the real party in interest and to ensure that any judgment has proper res judicata effect. *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78 (4th Cir.1973).

For the foregoing reasons, the Court grants Ford's motion to dismiss Duke's third-party complaint and grants Duke's motion to add the South Carolina School Board Insurance Trust as a party plaintiff in this action.

IT IS SO ORDERED.